# Exhibit 1, Part 3

actually owned shares in—or ever received a dividend payment from—Carlsberg.[224]

> **e.    The Bernina Plan subsequently submits a dividend WHT reclaim request to SKAT**

174.    Acupay System LLC ("Acupay"), which is a third-party service provider that facilitates the submission of dividend withholding tax reclaims, submitted the reclaim request to SKAT on behalf of the Bernina Plan.[225]



**Figure 16 – The Bernina Plan Solo Trade**

175.    The reclaim request package included a "Dividend Credit Advice" from Solo Capital representing that the Bernina Plan owned the 600,000 shares in Carlsberg described above and received a dividend on those shares net of withholding tax.

---

[224] I noted that 20 Plans purportedly traded, in aggregate, 12,920,000 shares of Carlsberg stock on March 21, 2013, representing a total market value of approximately DKK 7,576,233,766 (or USD $1.3 billion). I reviewed the Plans trading data for every purported transaction related to Carlsberg stock on March 21, 2013 and concluded that they all followed the same steps, and had the same circular trading pattern, as described in the sample Carlsberg transaction purportedly executed by the Bernina Plan.
[225] SKAT_MDL_001_00059511.



**Figure 17 – Dividend Credit Advice**[226]

### 3.    Sample "Complex loop" transaction purportedly executed by the Loggerhead Plan

176.    On March 19, 2015, the Loggerhead Plan purportedly purchased 6,847,676 shares of Novo Nordisk A/S – B ("Novo Nordisk") stock from a Solo-affiliated entity called Black Square Ltd.[227]  Upon review of the supporting documentation underlying this transaction and

---

[226] SKAT_MDL_001_00059511.
[227] Dilip Shah, who was employed by Solo Capital in 2011, controlled Black Square Ltd.  *See* CAYMAN_00002615.

a search of Solo Capital's records, there is no evidence that Black Square owned any shares in Novo Nordisk at the time of the sale. Thus, at the time of the sale, Black Square was a short-seller, and would have to acquire the shares to cover the short in time for delivery to the Loggerhead Plan on the settlement date. Black Square, however, did not obtain any shares from the market to cover the short. Rather, as demonstrated below, Black Square purportedly borrowed the shares from the Loggerhead Plan itself (through a three-step lending transaction). The Loggerhead Plan also did not have any Novo Nordisk shares to lend, making this a completely circular and fabricated securities transaction. Further, there is no evidence of actual shares of Novo Nordisk ever existing anywhere in this "complex loop" or entering in from some other external source.



**Figure 18 – Solo Trades for the Loggerhead Plan**

    a.    **Trade Approval 1: The Mako Financial Markets LLP purportedly purchased shares in Novo Nordisk from The Black Square Ltd in March 2015**

177.    On March 19, 2015, Mako Financial Markets LLP, acting as broker, purportedly purchased 6,847,676 shares of Novo Nordisk at a price of DKK 341.90 per share from Black

CONFIDENTIAL
Expert Report of Bruce G. Dubinsky
December 31, 2021
Page 60

Square Ltd for a total USD equivalent of $333.8 million.[228]  As noted above, there is no evidence that Black Square Ltd. ever actually owned these shares of Novo Nordisk since the sub-custodians acting for Solo Capital, who were supposedly acting as the custodians for the shares, have either affirmatively stated in sworn affidavits that they never had any record of the shares existing in their custody systems and/or produced documents from their share custody systems to reflect that they did not hold any Danish securities for Solo Capital during this period.  Also as noted above, based on my thorough review of Solo Capital's business records, I have not seen any documentation reflecting the transfer of Novo Nordisk shares from the market into Black Square's account at Solo Capital.



**Figure 19 – Trade Confirmation from Solo Capital to Mako Financial Markets LLP[229]**

---

[228] ELYSIUM-03957835
[229] ELYSIUM-03957835.

b.      **Trade Approval 2: The TJM Partnership PLC purportedly purchased shares in Novo Nordisk from Mako Financial Markets LLP in March 2015**

178.    Simultaneously on March 19, 2015 – and only <u>4 seconds</u> after the Black Square Ltd. transaction in the preceding step – The TJM Partnership PLC purportedly purchased the same number of shares in Novo Nordisk at the exact same price from Mako Financial Markets LLP.[230]  It is apparent from the timing and details of this trade and the prior trade that TJM Partnership purportedly purchased the Novo Nordisk securities from Black Square through the broker Mako Financial Markets LLP.



**Figure 20 – Trade Confirmation from Solo Capital to The TJM Partnership PLC[231]**

179.    Similar to FGC Securities LLC's role with the Bernina Plan, the use of the executing

---

[230] ELYSIUM-03957972.
[231] ELYSIUM-03957972.

broker Mako Financial Markets LLP has no apparent business purpose other than to create an air of legitimacy to the trade.  In the Solo Trades, there was no need for an executing broker because the counterparties did not need to seek liquidity from the open market.  Solo Capital pre-selected the counterparties to each trade from among the counterparties that had "on-boarded" to the Solo Capital platform and determined the volume of each trade.  As a result, Mako Financial Markets LLP served no legitimate function.

          c.      **Trade Approval 3: The Loggerhead Plan purportedly purchased shares in Novo Nordisk from The TJM Partnership PLC in March 2015**

180.    Next, simultaneously on March 19, 2015 – and just 16 seconds after the Mako Financial Markets LLP transaction in the preceding step – the Loggerhead Plan purportedly purchased the same number of shares in Novo Nordisk at the exact same price from The TJM Partnership PLC.[232]

---

[232] ELYSIUM-03957912.



**Figure 21 – Trade Confirmation from Solo Capital to the Loggerhead Plan**[233]

181.    The trade confirmation sent by Solo Capital indicates that the settlement date for the transaction was three business days later (T+3) on March 24, 2015.[234]

182.    It is apparent from the timing and details of this series of trades through Mako Financial Markets LLP that, in effect, the Loggerhead Plan purportedly purchased the Novo Nordisk securities from Black Square Ltd.  It appears that the only purpose in executing the purported trades with The TJM Partnership PLC in the middle was to add an extra layer of complexity to the paper trail for the transactions.  Once again, there is no evidence that any of these counterparties ever actually owned or had possession of shares in Novo Nordisk stock through any custodian.

---

[233] ELYSIUM-03957912.



**Figure 22 – The Loggerhead Plan Solo Trade**

> **d.      Stock Loan 1: The Loggerhead Plan purportedly loaned the Novo Nordisk shares it purchased to Neoteric Limited in March 2015**

183.    The Loggerhead Plan purportedly entered into a securities lending agreement with Neoteric Limited,[235] under which the Loggerhead Plan agreed to loan the <u>same shares</u> in Novo Nordisk that it purchased from The TJM Partnership PLC.[236]  The loan transaction settled on March 24, 2015 which was the same settlement date as the purported purchase of the shares.

---

[235] Neoteric was one of eight stock loan counterparties for which Martin Smith was a shareholder and director. Smith was also employed by Novus Capital Markets, a purported broker for the Solo Trades.  See paragraph 109.
[236] ELYSIUM-03977485.

| | | |
|---|---|---|
| **To:** | Trading@LoggerheadPension.com[Trading@LoggerheadPension.com] | |
| **Cc:** | martin.smith@neotericltd.com[martin.smith@neotericltd.com]; alex.smith@neotericltd.com[alex.smith@neotericltd.com]; solotradeapprovals@solo.com[solotradeapprovals@solo.com] | |
| **From:** | solotradeapprovals@solo.com[solotradeapprovals@solo.com] | |
| **Sent:** | Mon 23-03-2015 14:20:59 (UTC) | |
| **Subject:** | Account (LOG01) - trade approved | |

Dear Client,

Please accept this email as confirmation that the below stock loan transaction has been approved and booked to your Solo Capital Partners LLP custody account.

In case of any queries, please contact custody@solo.com.

Global Securities Services

**Solo Capital Partners LLP**

Details of Stock Loan Transaction:

| | | |
|---|---|---|
| **Client Account** | LOG01 | Client: The Loggerhead Plan |
| **Counterparty** | Neoteric Limited | Counterparty: Neoteric Limited |
| **Trade Type** | Lend | Trade Type: Stock Loan |
| **Ticker** | NOVOB | Ticker: NOVOB |
| **Product (Instrument)** | Stock Loan (Equity) | Instrument: Equity |
| **Currency** | DKK | |
| **Price** | 341.9000 | Quantity: 6,847,676 shares |
| **Quantity/Contracts** | 6,847,676 | Price: DKK 341.9000 |
| **Shapes** | **Shape 1** 6,847,676 | |
| **Notional** | 2,341,220,424.40 | Notional: DKK 2,341,220,424.40 |
| **Trade Date** | 23 March 2015 | |
| **Settlement Date** | 24 March 2015 | Trade Date: March 23, 2015 |
| **Haircut** | 0 | |
| **Term** | Open | Settlement Date: March 24, 2015 |
| **Interest Rate Type** | Fixed | |
| **Interest Rate** | 70.0000 | |
| **Lending Fee Rate** | 86.0000 | |
| **Cash Pool Type** | Fixed | |
| **Dividends** | 100% | |

**Figure 23 – Stock Loan Confirmation from Solo Capital to the Loggerhead Plan**[237]

184.    As part of the stock loan transaction, Neoteric Limited agreed to provide cash collateral to the Loggerhead Plan representing the full market value of the shares borrowed. However, the stock price that the loan agreement (and therefore the amount of collateral provided by Neoteric Limited) was premised on was the price that the Loggerhead Plan had purchased the shares from The TJM Partnership PLC on March 19, 2015 – rather than the market price as of the date of the stock loan on March 23, 2015.

---

[237] ELYSIUM-03977485.

CONFIDENTIAL
**Expert Report of Bruce G. Dubinsky**
**December 31, 2021**
**Page 66**

185.    As discussed above, the stock loan step in each of the Solo Trades takes place at the same price the security was purchased at (several days earlier), rather than at the market price as of the date of the stock loan. This does not comport with how securities lending works in the real world.

186.    In fact, the closing stock price of Novo Nordisk on March 23, 2015 declined by DKK 2.80 per share since the purported stock purchase on March 19, 2015.[238]  As a result, the total market value of the 6,847,676 shares that the Loggerhead Plan purportedly loaned to Neoteric Limited would have declined by DKK 19.2 million (or approximately USD $2.8 million). Given that the collateral purportedly provided by Neoteric Limited was based on the stock price as of March 19 rather than March 23, the drop in the stock price between the two dates resulted in Neoteric Limited purportedly providing the Loggerhead Plan with approximately DKK 19.2 million in excess collateral.



**Figure 24 – The Loggerhead Plan Solo Trade**

187.    I have reviewed the Solo Capital account statement for the Loggerhead Plan, which

---

[238] http://www.nasdaqomxnordic.com/shares/historicalprices (last visited December 23, 2021).

shows that the Loggerhead Plan deposited no funds into its Solo Capital trading account prior to its purported purchase of the Novo Nordisk securities, and had a zero cash balance at the time of the purchase.  The purpose of the stock loan was to ostensibly show that the Loggerhead Plan, a newly formed entity, had sufficient liquidity, via the cash collateral it purportedly received from Neoteric Limited, to fund the purchase of DKK 2,341,220,424.40 worth of Novo Nordisk stock at settlement on March 24, 2015, since it had virtually no assets prior to this to accomplish the purchase of the shares.[239]

> **e.    Stock Loan 2: Neoteric Limited purportedly loaned the Novo Nordisk shares it borrowed to Relative Value Trading GmbH**

188.    Neoteric Limited then loaned its shares in Novo Nordisk, the same shares that it had just borrowed from the Loggerhead Plan, to Relative Value Trading GmbH.[240]  The trade approval email for this transaction was sent just 7 minutes after the stock loan transaction it purportedly entered into with the Loggerhead Plan.[241]

---

[239] As of March 24, 2015, the Loggerhead Plan had a bank account balance of only $16 in its Wells Fargo account, *see* LH00000001 at 92.  Additionally, the 2015 financial statements for Loggerhead reports a beginning cash balance of $71,459, an ending cash balance of $115,682 and total trading income for the year of $2.4 million, *see* WH_MDL_00108530.  Therefore, without the collateral proceeds from the purported stock loan, the Loggerhead Plan lacked the liquidity necessary to purportedly purchase **$333.8 million** worth of Novo Nordisk stock.  It is important to note that I have seen no evidence of the existence of the actual cash collateral of approximately $334 million.
[240] Relative Value Trading was controlled by Alex Koerner, who also controlled four other stock loan counterparties. See paragraph 109.
[241] ELYSIUM-03978529.

| To: | martin.smith@neotericltd.com, alex.smith@neotericltd.com |
| --- | --- |
| Cc: | info@rvtgmbh.de, solotradeapprovals@solo.com |
| Subject: | Account (NEO01) - trade approved |
| Sent: | Mon, 23 Mar 2015 14:28:03 +0000 |
| From: | solotradeapprovals@solo.com |

Dear Client,

Please accept this email as confirmation that the below stock loan transaction has been approved and booked to your Solo Capital Partners LLP custody account.

In case of any queries, please contact custody@solo.com.

Global Securities Services

**Solo Capital Partners LLP**

Details of Stock Loan Transaction:

| | | | |
| --- | --- | --- | --- |
| **Client Account** | NEO01 | Client: Neoteric Limited | |
| **Counterparty** | Relative Value Trading GmbH | | |
| **Trade Type** | Lend | Counterparty: Relative Value Trading GmbH | |
| **Ticker** | NOVOB | | |
| **Product (Instrument)** | Stock Loan (Equity) | Trade Type: Stock Loan | |
| **Currency** | DKK | | |
| **Price** | 341.9000 | Ticker: NOVOB | |
| **Quantity/Contracts** | 6,847,676 | | |
| **Shapes** | **Shape 1** 6,847,676 | Instrument: Equity | |
| **Notional** | 2,341,220,424.40 | | |
| **Trade Date** | 23 March 2015 | Quantity: 6,847,676 shares | |
| **Settlement Date** | 24 March 2015 | | |
| **Haircut** | 0 | Price: DKK 341.9000 | |
| **Term** | Open | | |
| **Interest Rate Type** | Fixed | Notional: DKK 2,341,220,424.40 | |
| **Interest Rate** | 70.0000 | | |
| **Lending Fee Rate** | 91.0000 | Trade Date: March 23, 2015 | |
| **Cash Pool Type** | Fixed | | |
| **Dividends** | 100% | Settlement Date: March 24, 2015 | |

**Figure 25 – Stock Loan Confirmation from Solo Capital to Neoteric Limited**[242]

189.    The main terms of the loan agreement – the number of shares, price, trade date and settlement date – were the <u>exact same</u> as the terms stated in the stock loan agreement between the Loggerhead Plan and Neoteric Limited.[243]

---

[242] ELYSIUM-03978529.
[243] ELYSIUM-03978529.

CONFIDENTIAL
**Expert Report of Bruce G. Dubinsky**
**December 31, 2021**
**Page 69**



**Figure 26 – The Loggerhead Plan Solo Trade**

> **f.    Stock Loan 3: Relative Value Trading GmbH purportedly loaned the Novo Nordisk shares it borrowed to Black Square Ltd**

190.    Relative Value Trading GmbH then loaned its shares in Novo Nordisk, the same shares that it would borrow from Neoteric Limited, to Black Square Ltd.  However, the trade approval email for this transaction was sent 6 minutes **prior** to the stock loan transaction it purportedly entered into with Neoteric Limited.[244]

191.    This indicates that Relative Value Trading GmbH purportedly loaned shares in Novo Nordisk to Black Square Ltd **before** it had approval to borrow them from Neoteric Limited.

---

[244] ELYSIUM-03977720.

**To:** info@rvtgmbh.de
**Cc:** dilip@blacksquare.org, solotradeapprovals@solo.com
**Subject:** Account (RVT01) - trade approved
**Sent:** Mon, 23 Mar 2015 14:22:18 +0000
**From:** solotradeapprovals@solo.com

Dear Client,

Please accept this email as confirmation that the below stock loan transaction has been approved and booked to your Solo Capital Partners LLP custody account.

In case of any queries, please contact custody@solo.com.

Global Securities Services

**Solo Capital Partners LLP**

Details of Stock Loan Transaction:

| | |
|---|---|
| **Client Account** | RVT01 |
| **Counterpart** | Black Square Ltd. |
| **Trade Type** | Lend |
| **Ticker** | NOVOB |
| **Product (Instrument)** | Stock Loan (Equity) |
| **Currency** | DKK |
| **Price** | 341.9000 |
| **Quantity/Contracts** | 6,847,676 |
| **Shapes** | Shape 1 6,847,676 |
| **Notional** | 2,341,220,424.40 |
| **Trade Date** | 23 March 2015 |
| **Settlement Date** | 24 March 2015 |
| **Haircut** | 0 |
| **Term** | Open |
| **Interest Rate Type** | Fixed |
| **Interest Rate** | 70.0000 |
| **Lending Fee Rate** | 96.0000 |
| **Cash Pool Type** | Fixed |
| **Dividends** | 100% |

Client: Relative Value Trading GmbH
Counterparty: Black Square Ltd.
Trade Type: Stock Loan
Ticker: NOVOB
Instrument: Equity
Quantity: 6,847,676 shares
Price: DKK 341.9000
Notional: DKK 2,341,220,424.40
Trade Date: March 23, 2015
Settlement Date: March 24, 2015

**Figure 27 – Stock Loan Confirmation from Solo Capital to Relative Value Trading GmbH**[245]

192.    The main terms of the loan agreement – the number of shares, price, trade date and settlement date – were the _exact same_ as the terms stated in the stock loan agreement between Neoteric Limited and Relative Value Trading GmbH.[246]

193.    The overall impact of this transaction, in aggregate, is that the Loggerhead Plan nearly simultaneously (1) purchased DKK 2,341,220,424 worth of Novo Nordisk stock from,

[245] ELYSIUM-03977720.
[246] ELYSIUM-03977720.