# Exhibit 6

IN THE DIFC COURT OF FIRST INSTANCE                    Claim No: CFI-048-2018

BETWEEN:

SKAT

(The Danish Customs & Tax Administration)

Claimant

and

(1) ELYSIUM GLOBAL (DUBAI) Limited
(2) ELYSIUM PROPERTIES LIMITED

Defendants

REPORT OF THE SUPERVISING LEGAL REPRESENTATIVE
SEARCH COMMENCED: 28 JUNE 2018

## 1.     The Order

1.1     On 27 June 2018, Justice Sir Jeremy Cooke granted the Claimant a search order ("the Order") in respect of the First Defendant's premises at Unit OT 16-32, Level 16, Central Park Offices, DIFC, Dubai, PO Box 506699, UAE ("the Premises").

1.2     Under the terms of the Order, Mr. Philip Punwar of Baker Botts LLP was appointed as the Supervising Legal Representative ("SLR").

Page 1 of 14

1.3     Pinsent Masons LLP have represented the Claimant in these proceedings.

## 2.     Execution of the Order

Day 1: Thursday, 28 June 2018

2.1     Execution of the Order was scheduled for 11.30 am on Thursday, 28 June 2018. At 11 am on the morning of the search, the SLR met Ms. Natalie Winwood of Pinsent Masons LLP in the DIFC. Ms. Winwood was accompanied by Mr. Darren Mullins of Deloitte Professional Services (Dubai) Limited ("Deloitte").

2.2     At 11.45 am, Ms. Winwood, Mr. Mullins and the SLR arrived at the building in which the Premises are located.

2.3     On arrival at Central Park Offices, the SLR was introduced to Mr. Mark Raymont of Pinsent Masons LLP. Mr. Raymont was accompanied by Mr. David Townsend, Mr. Terence Sequiera and Mr. Leons Mathews of Deloitte.

2.4     At 12.10 am, the SLR rang the bell of the Premises and was admitted into the reception area of an open plan office by a female later identified to the SLR as Ms. Natalia Verenikina. The SLR observed three males in a glass partitioned conference room behind the reception desk, and approximately six females at terminals in the main office area.

2.5     After confirming the premises were those of the First Defendant, the SLR provided a copy of his professional card and proffered his Emirates ID for inspection before explaining the purpose of his visit. The SLR asked to see the most senior officer of the First Defendant.

2.6     The SLR was initially taken to speak with a male by the name of Mr. Mark Fernandes. Mr. Fernandes was one of the individuals the SLR had previously observed in the conference room behind the reception desk. Mr. Fernandes explained that he was a Consultant to the First Defendant. Thereafter, the SLR was shown to the office of Mr. Sandesh Dhomne. Mr. Dhomne introduced himself as a director of the First Defendant.



The SLR recognized Mr. Dhomne as another of the individuals he had observed in the conference room.

2.7    The SLR provided proof of his identity and served the Order on Mr. Dhomne, together with a box containing the additional documents identified in the Order at para. 1 of Schedule D.

2.8    Having explained the meaning of the Order to Mr. Dhomne, the SLR was introduced to another director of the First Respondent, who gave his name as Mr. Sanjay Shah. The SLR again provided proof of his identity and explained the terms of the Order to Mr. Shah. Mr. Shah thereafter signed a copy of the Order to confirm that he had received the original from the SLR. A copy of the Order signed by Mr. Shah is attached at **Annex 1** to this report.

2.9    On a subsequent day of the search, Mr. Shah referred to Mr. Dhomne as the First Defendant's "Head of Finance". At the same time, Mr. Shah explained to the SLR that although Mr. Fernandes was not a qualified lawyer, he acted as the First Defendant's "Head of Legal".

2.10   At 12.45 pm, Mr. Shah explained to the SLR that he would like the start of the search to be delayed pending his taking legal advice. Mr. Shah kept the SLR appraised of his actions whilst the SLR remained within the Premises.

2.11   At 1.25 pm, Mr. Shah invited the SLR to speak by speaker-phone with the First Defendant's legal advisor, Mr. Leslie Allen of Mishcon De Reya Solicitors in London. A ten-minute conversation ensued in the presence of Mr. Shah.

2.12   The SLR noted Mr. Shah's concerns about how emails he had received that he believed were subject to Legal Professional Privilege (the "Potentially Privileged Documents") were to be handled. It was agreed that the SLR would raise the issue with the Claimant's Legal Representatives with a view to obtaining their agreement to the SLR taking exclusive custody of the images of Mr. Shah's electronic devices. Consequently, Mr. Shah invited Ms. Winwood, Mr. Raymont and Mr. Mullins into the Premises and made a conference room available for the SLR's use.



2.13    Following a 35 minute meeting with Mr. Raymont, Ms. Winwood and Mr. Mullins, the SLR, Mr. Shah and the Claimant's Legal Representatives agreed that it would be impractical for Mr. Shah to identify all emails etc. over which privilege was claimed without delaying the commencement and execution of the search unduly, and it would likewise be impractical for the SLR to review *in situ* all Potentially Privileged Documents.

2.14    Mr. Shah, the Claimant's Legal Representatives and the SLR, agreed that the SLR would take into his exclusive custody an electronic "Forensic Image" of Mr. Shah's Office 365 mailbox, DropBox folder, desktop PC, laptop and 2 mobile telephones. Mr. Shah and the Claimant's Legal Representatives acknowledged that in doing so the SLR would necessarily be taking into his custody electronic documents that were potentially privileged as well as documents over which no privilege was asserted. A copy of the Potentially Privileged Document agreement prepared by the Claimant's Legal Representatives is attached at **Annex 2** to this report.

2.15    Between 2.15 pm and 2.30 pm Mr. Shah sought further legal advice from Mr. Allan of Mishcon De Reya Solicitors. At Mr. Shah's invitation, the SLR explained to Mr. Allan what had been agreed with respect to the Potentially Privileged Documents.

2.16    Mr. Shah was advised by the SLR that the SLR could be requested to withhold from the search any documents that might incriminate the First Defendant. Mr. Shah indicated that he was not aware of any such documents.

2.17    The SLR declared the search formally commenced at 2.34 pm in the presence of Mr. Shah, Mr. Mullins, Mr. Raymont and Ms. Winwood. At 2.50 pm Mr. David Townsend, Mr. Terence Sequiera and Mr. Leons Mathews of Deloitte arrived at the Premises. Shortly afterwards, the search team was joined by another member of Pinsent Masons LLP, Mr. Nick Tolley. The First Defendant's staff remained within the Premises until released by Mr. Shah at 4.45 pm.

2.18    In the presence of the SLR and the Claimant's Legal Representatives, Mr. Shah was requested to comply with paragraph 18 of the Order. Mr. Shah identified the

whereabouts of listed items within the Premises, namely computers, electronic storage devices and documents.

2.19 Prior to the commencement of the search, Mr. Shah did not claim that any Potentially Privileged Documents were likely be found on devices other than those in his office. Consequently, once the search was started, Deloitte commenced inspecting and imaging the remaining computer hard drives within the Premises in the expectation that the images taken would be handed over to the Claimant's Legal Representatives.

2.20 During the course of the day the SLR determined that certain hard copy documents were outside the terms of the Order.

2.21 During the search, Mr. Shah indicated that the bulk of the First Defendant's data was in fact stored on "the Cloud". Mr. Shah expressed the view that whilst the Order identified e-mail accounts "accessible from the Premises" as being within the search, it did not identify other electronic data/files stored off the Premises but "accessible from the Premises". Mr. Shah also indicated that there would be Potentially Privileged Documents (i.e. emails) stored on the Cloud.

2.22 The SLR noted that there was a dispute as to whether the Cloud constituted an "Electronic storage device" under the terms of the Order.

2.23 To expedite the search and minimize the disruption to the First Defendant's business, the Claimant's Legal Representatives, Mr. Shah and the SLR agreed that the data downloaded and imaged from the Cloud should be delivered into the exclusive custody of the SLR until the Court directed otherwise. In the event, the volume of data to be downloaded has proved considerably greater than envisaged and it is still being downloaded by Deloitte as at the date of this report.

2.24 The search was suspended from 4.30 pm - 4.45 pm.

2.25 At 5.15 pm, Mr. Shah, the Claimant's Legal Representatives and the SLR agreed that to expedite the execution of the Order, the search team would be increased. This agreement was documented as part of the Potentially Privileged Document agreement attached at **Annex 2** to this report. Consequently, at 5.50 pm Mr. Tamim Momeni and

Ms. Farah Gaber, each employees of the Claimant's Legal Representatives, joined the search team. They remained until 9 pm. At the same time, Mr. Aamer Waheed of Deloitte joined the search team. He remained until 9.10 pm.

2.26 It was agreed between the Claimant's Legal Representatives, Mr. Shah and the SLR that the search would be suspended when the Claimant's Legal Representatives had identified all hard copy documents coming within the terms of the Order that they wished to remove for copying.

2.27 Shortly before the search was suspended, the Claimant's Legal Representatives, Mr. Shah and the SLR agreed that Deloitte would be permitted to leave their imaging machines running (but unattended) in the Premises over the weekend whilst they (i) downloaded/imaged Mr. Shah's Office 365 mailbox from the Cloud (ii) imaged certain other computers located within the Premises and (iii) downloaded/imaged other cloud based Office 365 email and network data belonging to the First Defendant. This agreement was also documented as part of the Potentially Privileged Document agreement attached at **Annex 2** to this report.

2.28 Prior to the suspension of the search, the SLR determined that it would not be practicable for a list to be prepared identifying every single hard copy document that was to be removed for copying by the Claimant's Legal Representatives. Consequently, Mr. Shah was provided with a summary of the hard copy documents to be removed from the Premises. Mr. Shah checked the summary list of documents provided to him against the storage boxes offered for inspection by the Claimant's Legal Representatives. A copy of the summary list signed by Mr. Shah is attached at **Annex 3** to this report. These documents were copied by the Claimant's Legal Representatives and returned to the First Defendant in the presence of the SLR at 4.15 pm on Thursday, 05 July 2018.

2.29 Prior to the suspension of the search, the SLR was notified by the Claimant's Legal Representatives that Deloitte had reported that permission restrictions were preventing them from accessing from the Cloud the Office 365 mailboxes of Mr. Shah and the current employees of the First Defendant. The placing of a "litigation hold" on these email accounts was subsequently agreed to by Mr. Shah, the SLR and the Claimant's

Legal Representatives. The litigation hold agreement prepared by the Claimant's Legal Representatives is attached at **Annex 4** to this report.

2.30 During the search certain hard copy documents were identified by the Claimant's Legal Representatives that Mr. Shah either believed were outside the scope of the search or were privileged. Copies of these documents have been withheld from the search and retained by the SLR pending further direction of the Court pursuant to paragraph 4 of Schedule E. A list of documents retained by the SLR on 28 June 2018 was given to Mr. Shah. A copy of this list signed by Mr. Shah has been kept by the SLR pending further Order of the Court. The same list confirmed that the SLR had been provided with three external storage devices (by Deloitte) each containing a copy of an image of Mr. Shah's desktop PC, laptop, his two mobile phones and his DropBox folder.

2.31 The search was suspended at 12.10 am on Friday, 29 June 2018. It was agreed that it would recommence at 8.30 am on Sunday, 01 July 2018.

Day 2: Sunday, 01 July 2018

2.32 Mr. Shah arranged to meet with an unidentified lawyer at or about 9 am on Sunday, 01 July 2018. Consequently, although the SLR and the search party were at Central Park Offices at 8.30 am, they were not given access to the Premises until 10 am. Mr. Shah's meeting appears to have taken place in the reception area of the building (Central Park Offices) in which the Premises are located.

2.33 The SLR is not aware of anything that would have prevented Mr. Shah holding his meeting at the Premises during the course of the resumed search. The SLR subsequently advised Messrs. Davidson that he was concerned by Mr. Shah's decision not to enable the search to recommence at 8.30 am.

2.34 The search recommenced at 10 am. Mr. Shah was accompanied by Ms. Tanisha Saxena of Davidson & Co and a trainee also from that firm. The search party was comprised of Ms. Natalie Winwood and Mr. Damian Crosse of Pinsent Masons LLP and Mr. Paul Wright, Mr. David Townsend and Mr. Leons Mathews of Deloitte.



2.35 At or about the time that the search was recommenced, Mr. Shah advised that he and his wife had entered the Premises over the weekend to photocopy documents served with the Order. At about this time the Claimant's Legal Representatives advised the SLR in the presence of Mr. Shah that Deloitte believed several loose hard drives that Deloitte had identified on Day 1 of the search but neither retained nor imaged, had been removed from the Premises. Mr. Shah was unable to assist.

2.36 Mr. Shah indicated to the SLR that he was concerned as to who would be given copies of the emails that Deloitte was still in the process of downloading/imaging from the staff's hard drives and from the Cloud. The SLR pointed out to Mr. Shah that he had not mentioned on Day 1 of the search that staff hard drives and Cloud based storage for staff emails might also contain Potentially Privileged Documents. The SLR asked Mr. Shah and his lawyers to identify the staff that Mr. Shah believed had received Potentially Privileged Documents, the period during which they would have received them and why they would have received them. At this point Mr. Shah advised the SLR that the First Defendant had its own in-house counsel who had been present on Day 1 of the search and that this individual was one of about three present and three former employees that would have received Potentially Privileged Documents by email. The information requested by the SLR was not provided by the time the search was suspended on Day 2. A list of the company email accounts/addresses to which Mr. Shah believed Potentially Privileged Documents may have been sent was provided by Mr. Shah on Day 3.

2.37 The SLR explained to the Claimant's Legal Representatives and Mr. Shah that he would take into custody any disputed material the parties jointly requested him to take into custody. At 12.20 pm Mr. Jonathan Davidson of Davidson & Co arrived. Between 12.35 pm and 1 pm Mr. Davidson and Mr. Crosse discussed the practicalities of the search with the SLR and agreed that the SLR should also take custody of all images of the staff's hard drives and all material being down loaded and imaged from the Cloud.

2.38 The search was suspended from 1.20 pm until 1.50 pm. Mr. Davidson left at 2.40 pm and Mr. Crosse left at 2.50 pm.

Page **8** of **14**

2.39    During the afternoon of Day 2 of the search, the SLR was advised that in addition to the material stored on the Cloud that Deloitte had been downloading and imaging since Day 1 of the search, the First Respondent had a separate digital archive on the Cloud of older emails going back several years. At 3.30 pm the SLR reminded Mr. Shah and his Legal Advisors of the terms of paragraph 18(a) of the Order. Mr. Shah indicated that he would take steps to arrange for access to be provided to the archived material once he could get in touch with his former IT manager, an individual he described as being the brother of his present IT manager who was currently in London.

2.40    At 5.10 pm the search was suspended until 2 pm on Monday, 02 July 2018. Nothing was removed from the Premises at the end of Day 2.

2.41    By agreement between the parties, computers that Deloitte was still in the process of imaging were left running in the conference room with written instructions placed on them indicating that they were not to be touched.

Day 3: Monday, 02 July 2018

2.42    The search was recommenced at 2.05 pm. In addition to Mr. Shah and the SLR, those attending included Ms. Natalie Winwood and Mr. Damian Crosse of Pinsent Masons LLP, Ms. Tanisha Saxena and Mr. Jonathan Davidson of Davidson & Co and Mr. Paul Wright, Mr. Leons Mathews and Mr. David Townsend of Deloitte.

2.43    During the course of the day the SLR determined that certain mobiles phones were outside the terms of the Order.

2.44    Mr. Shah provided the Claimant's Legal Representatives with the First Defendant's IT manager's laptop, the existence of which had not been disclosed until Day 2 of the search. Mr. Shah also provided the Claimant's Legal Representatives with a further list of laptops within the Premises.

2.45    Mr. Shah provided the Claimant's Legal Representatives and the SLR with a list of company email addresses/accounts to which Mr. Shah believed Potentially Privileged Documents may have been sent. That list is attached at **Annex 5** to this report.



2.46    Deloitte continued downloading and imaging data from the first Cloud identified by Mr. Shah. The Claimant's Legal Representatives advised the SLR that this process had been delayed by passwords having changed over the weekend.

2.47    Steps were taken by the First Defendant to give Deloitte access to the large body of archived material that the First Respondent had earlier indicated was stored on a second Cloud identified as "the Network Share". Access was given to Deloitte via Mr. Shah's laptop at approximately 3 pm.

2.48    In light of the time that had elapsed since the commencement of the search on 28 June 2018 and the future need for the Potentially Privileged Documents to be assessed, the SLR (in the presence of Mr. Jonathan Davidson) requested that Mr. Shah provide him by 2pm the next day with (i) a screenshot of the "From" list taken from his PC email account listing (in turn) all emails received by him from the law firms he claimed had sent him legal advice by email (ii) a screen shot listing the Potentially Privileged Documents forwarded/sent by Mr. Shah to each employee he claimed may have received copies of emails received from law firms and (iii) the same screen shots for material held on the Cloud. The SLR subsequently agreed with Mr. Shah that whilst Deloitte were imaging one or other Cloud he would not be expected to prepare the third class of screenshots.

2.49    Mr. Davidson left the Premises at 2.50 pm and returned at 3.30 pm.

2.50    By 5 pm Deloitte was still imaging the Network Share. Consequently, it was agreed by Mr. Shah, the SLR and the Claimant's Legal Representatives that Deloitte should take into custody Mr. Shah's laptop and continue imaging it from their offices. A copy of the agreement prepared by the Claimant's Legal Representatives is attached at **Annex 5** to this report.

2.51    At 5.45 pm the search was suspended until 9 am the following day.

Day 4: Tuesday, 03 July 2018

2.52    The search recommenced at 9.05 am. Those attending included Mr. Shah, the SLR, Ms. Natalie Winwood of Pinsent Mason LLP and Mr. David Townsend, Mr. Leons

Mathews and Mr. Paul Wright of Deloitte. At 9.10 am Mr. Jonathan Davidson, Ms. Tanisha Saxena and Mr. Andrew Lyons of Davidson & Co arrived.

2.53    Deloitte continued their work at the Premises and provided an update on their progress downloading and imaging the Network Share. They advised that the downloading would take several more days and would be slowed down if the Network Share was accessed by the First Defendant.

2.54    The search was suspended between 1.40 pm and 2.10 pm.

2.55    At 2.15 pm Mr. Shah advised the SLR that he had prepared screen shots of the emails stored on his PC that he believed constituted Potentially Privileged Documents. The screenshots were not arranged by sender (i.e. law firm) and included non-privileged emails that happened to include the name of law firms included in Mr. Shah's search i.e. legal updates and marketing materials sent by law firms and other organisations.

2.56    Mr. Shah indicated to the SLR that he had extracted the actual emails and placed them in a separate folder on his PC. The SLR observed that there were a great many Potentially Privileged Documents. Mr. Shah agreed to provide the SLR with copies of the material he had prepared and extracted on a storage device. [In the event, the provision of the promised storage device was overlooked at the conclusion of the search on the morning of 09 July 2018. On the afternoon of 09 July 2018, the SLR emailed the First Respondent's Legal Representatives asking after the storage device. No response has yet been received].

2.57    Mr. Shah indicated that he would be able to identify the Potentially Privileged Documents (i.e. emails) on the Network Share once Deloitte had finished downloading and imaging it.

2.58    At 4.17 pm Mr. Shah emailed the SLR a schedule showing the senders of the Potentially Privileged Documents and the subject matter of their correspondence. This schedule was copied to Messrs. Davidson & Co only. The list is held by the SLR pending the direction of the Court.

2.59    At 5.50 pm the search was suspended until 4 pm the following day.

Day 5: Wednesday, 04 July 2018

2.60    The search recommenced at 4 pm. Those in attendance included Mr. Shah, the SLR, Ms. Natalie Winwood of Pinsent Masons LLP, Mr. David Townsend, Mr. Leons Mathews and Mr. Paul Wright of Deloitte and Ms. Tanisha Saxena and Mr. Andrew Lyons of Davidson & Co.

2.61    Deloitte provide an update as to the progress they were making in downloading and imaging the Network Share. They explained that this would still take several more days.

2.62    Following a discussion between those present as to how best to ensure that all data imaged was kept as securely as possible until the court gave further directions, it was agreed that Deloitte or a third-party IT specialist was best able to provide the necessary level of secure storage. Those present agreed that they would be content for Deloitte to take custody of all stored data. The SLR indicated that he would seek directions from the Court.

2.63    At 5.45 pm the search was suspended until 4.15 pm the following day.

Day 6: Thursday, 05 July 2018

2.64    At 10.37 am the SLR sent a request for directions to the Court by email. At 1.51 pm the SLR provided the Court with a draft Order, which the parties acknowledged they consented to.

2.65    The search recommenced at 4.15 pm.

2.66    The Claimant's Legal Representatives returned to Mr. Shah the original hard copy documents they had removed for copying on Day 1 of the search.

2.67    At 5.05 pm the search was suspended.

Day 7: Monday, 09 July 2018

Page 12 of 14

2.68    The search recommenced at 10 am. Those in attendance included Mr. Shah, the SLR, Ms. Natalie Winwood of Pinsent Masons LLP, Mr. David Townsend and Mr. Paul Wright of Deloitte and Ms. Tanisha Saxena and Mr. Andrew Lyons of Davidson & Co.

2.69    Deloitte provide an update as to the progress they were making in downloading and imaging the Network Share. They explained that this would still take several more days and reported that the download rate had slowed since the First Defendant had resumed accessing the Network Share itself.

2.70    On Sunday, 08 July 2018 the Court had issued the further Order (the "Further Order") of Justice Sir Jeremy Cooke in substantially the same form agreed by the parties on Thursday, 05 July 2018. A copy of the Further Order is attached at **Annex 6** to this report.

2.71    Pursuant to the terms of the Further Order, the SLR delivered into the custody of Deloitte the three external storage devices that he had received from Deloitte at the conclusion of Day 1 of the search, each of which contained a copy of an image of Mr. Shah's desktop PC, laptop, his two mobile phones and his DropBox folder.

2.72    Deloitte provided Mr. Shah with a complete list of the electronic devices belonging to or used by the First Defendant that it had removed from the Premises and/or imaged during the course of the search. A copy of the list signed by Mr. Shah is attached at **Annex 7** to this report.

2.73    The search was concluded at 10.25 am.

## 3.    Summary Observations

3.1    The Claimant's Legal Representatives were able to remove and copy a considerable number of hard copy documents falling within the terms of the Order.

3.2    A significantly larger amount of digital data was present within, and accessible from, the Premises than the Claimant's Legal Representatives had anticipated. According to the First Defendant, a significant amount of potentially privileged material was also

Page **13** of **14**

stored digitally. The SLR was subsequently able to ascertain that there were grounds for believing that to be the case.

3.3     In order to limit the disruption to the First Defendant's business and conclude the search within a reasonable period of time it was agreed that all data should be retained by the SLR/Deloitte in the expectation that after hearing the parties the Court would give directions for how the Potentially Privileged Documents should be removed from the totality of the imaged material and then reviewed.

3.4     The SLR has taken into his custody copies of a number of hard copy documents the status of which he is unsure of.

**PHILIP PUNWAR**

10 JULY 2018

IN THE DIFC COURT OF FIRST INSTANCE

CLAIM NO: CFI-048-2018

BETWEEN:

SKAT
(The Danish Customs and Tax Administration)

Claimant

- and -

(1) ELYSIUM GLOBAL (DUBAI) LIMITED
(2) ELYSIUM PROPERTIES LIMITED

Defendants

---

## ANNEX 1

TO THE REPORT OF THE SUPERVISING LEGAL REPRESENTATIVE

SEARCH COMMENCED: THURSDAY, 28 JUNE 2018

Claim No: [Not assigned]

## THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

IN THE COURT OF FIRST INSTANCE

BEFORE JUSTICE SIR JEREMY COOKE

BETWEEN

**SKAT**
**(The Danish Customs and Tax Administration)**

Claimant

and

**(1) ELYSIUM GLOBAL (DUBAI) LIMITED**

**(2) ELYSIUM PROPERTIES LIMITED**

Defendants

---

## SEARCH ORDER OF JUSTICE SIR JEREMY COOKE

---

Defendants:

**Elysium Global (Dubai) Limited**

**Elysium Properties Limited**

Unit OT 16 – 32, Level 16, Central Park Offices, DIFC, Dubai, PO Box 506699.

## PENAL NOTICE

IF YOU ELYSIUM GLOBAL (DUBAI) LIMITED DISOBEY THIS ORDER YOU MAY BE HELD TO BE IN CONTEMPT OF COURT AND YOUR DIRECTORS MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED OR THE COMPANY MAY BE FINED OR HAVE ITS ASSETS SEIZED.

ANY OTHER PERSON WHO KNOWS OF THIS ORDER AND DOES ANYTHING WHICH HELPS OR PERMITS THE RESPONDENT TO BREACH THE TERMS OF THIS ORDER MAY ALSO BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE IMPRISONED, FINED OR HAVE THEIR ASSETS SEIZED.

Received by Hand
from SLR 28/6/18

1

## THIS ORDER

1.  This is a Search Order made against Elysium Global (Dubai) Limited (the "First Respondent") on 27 June 2018 by Justice Sir Jeremy Cooke on the application of SKAT (the Danish Customs and Tax Administration) (the "Applicant"). The Judge read the Affidavits listed in Schedule F and accepted the undertakings set out in Schedules C, D and E at the end of this order.

2.  This order was made at a hearing without notice to the First Respondent. The First Respondent has a right to apply to the Court to vary or discharge the order — see paragraph 25 below.

3.  There will be a further hearing in respect of this order on 12 July 2018 (the "Return Date").

4.  If there is more than one Respondent:

    (a)  unless otherwise stated, references in this order to the "Respondent" mean both or all of them; and

    (b)  this order is effective against any Respondent on whom it is served or who is given notice of it.

5.  This order must be complied with by:

    (a)  The First Respondent;

    (b)  any director, officer, partner or responsible employee of the First Respondent; and

    (c)  any other person having responsible control of the premises to be searched.

## THE SEARCH

6.  The First Respondent must permit the following persons:

    (a)  Mr Philip Punwar, partner at Baker Botts LLP (the "Supervising Legal Representative");

    (b)  Mr Mark Raymont, a legal representative in the firm of Pinsent Masons LLP, the Applicant's legal representatives;

    (c)  Mr Darren Mullins of Deloitte Professional Services (DIFC) Limited, an IT Specialist, together with up to 3 further IT Specialists from Deloitte Professional Services (DIFC) Limited; and

(d)      up to 2 other persons, being legal representatives in the firm of Pinsent Masons LLP, accompanying them,

(together the "search party"), to enter the premises mentioned in Schedule A to this order and any other premises of the First Respondent identified under paragraph 18 below and any vehicles under the First Respondent's control on or around the premises (the "premises") so that they can search for, inspect, photograph, photocopy, take digital copies of and deliver into the safekeeping of the Applicant's legal representatives all the documents and articles which are listed in Schedule B to this order (the "listed items").

7.       Having permitted the search party to enter the premises, the First Respondent must allow the search party to remain on the premises until the search is complete. In the event that it becomes necessary for any of those persons to leave the premises before the search is complete, the First Respondent must allow them to re-enter the premises immediately upon their seeking re-entry on the same or the following day in order to complete the search.

**RESTRICTIONS ON SEARCH**

8.       This order does not affect, and is made without prejudice to, any action by the law enforcement agencies of Dubai.

9.       Before the First Respondent allows anybody onto the premises to carry out this order, it is entitled to have the Supervising Legal Representative explain to it what the order means in everyday language.

10.      The First Respondent is entitled to seek legal advice and to ask the Court to vary or discharge this order. Whilst doing so, they may ask the Supervising Legal Representative to delay starting the search for up to 2 hours or such other longer period as the Supervising Legal Representative may permit. However, the First Respondent must:

(a)      comply with the terms of paragraph 20 below;

(b)      not disturb or remove any listed items; and

(c)      permit the Supervising Legal Representative to enter, but not start to search.

11.      Before permitting entry to the premises by any person other than the Supervising Legal Representative, the First Respondent may, for a short time (not to exceed two hours, unless the Supervising Legal Representative agrees to a longer period) gather together any documents it believes may be privileged; and hand them to the Supervising Legal

Representative for him to assess whether they are privileged as claimed. If the Supervising Legal Representative decides that of any of the documents may be privileged or is in any doubt as to their status, he will exclude them from the search and retain them in his possession pending further Order of the Court.

12.   If the First Respondent wishes to take legal advice and gather documents as permitted, it must first inform the Supervising Legal Representative and keep him informed of the steps being taken.

13.   No item may be removed from the premises until a list of the items to be removed has been prepared, and a copy of the list has been supplied to the First Respondent, and they have been given a reasonable opportunity to check the list.

14.   The premises must not be searched, and items must not be removed from them, except in the presence of the First Respondent.

15.   If the Supervising Legal Representative is satisfied that full compliance with paragraphs 13 or 14 is not practicable, he may permit the search to proceed and items to be removed without fully complying with them.

## DELIVERY UP OF ARTICLES/DOCUMENTS

16.   The First Respondent must immediately hand over to the Applicant's legal representatives any of the listed items, which are in their possession or under their control, save for any computer or hard disk integral to any computer. Any items the subject of a dispute as to whether they are listed items must immediately be handed over to the Supervising Legal Representative for safe keeping pending resolution of the dispute or further order of the Court.

17.   The First Respondent must immediately give the search party effective access to the computers on the premises, with all necessary passwords, to enable the computers to be searched. If they contain any listed items the First Respondent must cause the listed items to be displayed so that they can be read and copied. The First Respondent must provide the Applicant's legal representatives with copies of all listed items contained in the computers. All reasonable steps shall be taken by the Applicant and the Applicant's legal representatives to ensure that no damage is done to any computer or data. The Applicant and his representatives may not themselves search the First Respondent's computers unless they have sufficient expertise to do so without damaging the First Respondent's system.

4



## PROVISION OF INFORMATION

18.  The First Respondent must immediately inform the Applicant's legal representatives (in the presence of the Supervising Legal Representative) so far as they are aware:

(a)  where all the listed items are;

(b)  the name and address of everyone who has supplied him, or offered to supply him, with listed items;

(c)  the name and address of everyone to whom he has supplied, or offered to supply, listed items; and

(d)  full details of the dates and quantities of every such supply and offer.

19.  As soon as reasonably possible and in any event within 7 days after being served with this order the First Respondent must cause to be sworn and served an affidavit setting out the above information.

## PROHIBITED ACTS

20.  Until 4.30 p.m. on the Return Date the First Respondent must not destroy, tamper with, cancel or part with possession, power, custody or control of the listed items otherwise than in accordance with the terms of this order.

## COSTS

21.  The costs of this application are reserved to the Judge hearing the application on the Return Date.

## SEALING THE COURT FILE

22.  The court file in respect of this matter shall be sealed and no information capable of identifying this matter shall be published or otherwise made publically available until further order of the Court.

## RESTRICTIONS ON SERVICE

23.  This order may only be served between 9.30am and 4.00pm and on a weekday.



5

24.    This order must be served by the Supervising Legal Representative, and paragraph 6 of the order must be carried out in his presence and under his supervision.

## VARIATION AND DISCHARGE OF THIS ORDER

25.    Anyone served with or notified of this order may apply to the Court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Applicant's legal representatives. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's legal representatives in advance.

## INTERPRETATION OF THIS ORDER

26.    Any requirement that something shall be done to or in the presence of the Respondent means:

    (1)    if there is more than one Respondent, to or in the presence of any one of them; and

    (2)    if a Respondent is not an individual, to or in the presence of a director, officer, partner or responsible employee.

27.    A Respondent which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

## COMMUNICATIONS WITH THE COURT

28.    All communications to the Court about this order should be sent to:

    Ground Floor, Building 4, Gate District, UAE

    Telephone: + 971 4 427 3333

    Fax: +971 4 427 3330

    Email: registry@difccourts.ae

    The offices are open between 10am to 5pm, Sunday to Thursday (excluding Public Holidays)

Issued by:
**Ayesha Bin Kalban**
Assistant Registrar
Date of issue: 27 June 2018
At: 5pm



**SCHEDULE A**

THE PREMISES

Unit OT 16 – 32, Level 16, Central Park Offices, DIFC, Dubai, UAE



**SCHEDULE B**

<u>THE LISTED ITEMS</u>

Personal computers belonging to or used by the First Respondent.

Laptops belonging to or used by the First Respondent.

Electronic storage devices belonging to or used by the First Respondent

Mobile telephones or other mobile electronic devices (including iPads) belonging to or used by the First Respondent.

Voicemail and other audio recording devices.

Any bank statements, whether relating to bank accounts in the First Respondent's name or otherwise.

Any document containing information about any property or other assets owned (or partially owned) by First Respondent.

Any document containing information about any transaction entered into by or on behalf of the First Respondent.

Email accounts accessible from the Premises and used by the First Respondent, its officers or employees.



**SCHEDULE C**

UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT

1.     If the Court later finds that this order or carrying it out has caused loss to the First Respondent, and decides that the First Respondent should be compensated for that loss, the Applicant will comply with any order the Court may make. Further if the carrying out of this order has been in breach of the terms of this order or otherwise in a manner inconsistent with the Applicant's legal representatives' duties as officers of the Court, the Applicant will comply with any order for damages the Court may make.

2.     The Applicant will not, without the permission of the Court, use any information or documents obtained as a result of carrying out this order nor inform anyone else of these proceedings except for the purposes of these proceedings (including adding further Respondents) or commencing or pursuing civil proceedings in relation to the same or related subject matter to these proceedings in the Dubai and English Courts until after the Return Date.

3. ·   As soon as reasonably .practicable, the Applicant, will issue and serve an application for continuation of the order.



**SCHEDULE D**

UNDERTAKINGS GIVEN BY THE APPLICANT'S LEGAL REPRESENTATIVES

1.    The Applicant's legal representatives will provide to the Supervising Legal Representative for service on the First Respondent:

    (a)    a service copy of this order;

    (b)    the claim form (with defendant's response pack) or, if not issued, the draft produced to the Court;

    (c)    (if available) an application for a hearing on the Return Date;

    (d)    copies of the affidavits and exhibits capable of being copied containing the evidence relied upon by the Applicant;

    (e)    a note of any allegation of fact made orally to the Court where such allegation is not contained in the affidavits or draft affidavits read by the Judge; and

    (f)    a copy of the skeleton argument produced to the Court by the Applicant's legal representatives.

2.    The Applicants' legal representatives will answer at once to the best of their ability any question whether a particular item is a listed item.

3.    Subject as provided below the Applicant's legal representatives will retain in their own safe keeping all items obtained as a result of this order until the Court directs otherwise.

4.    The Applicant's legal representatives will return the originals of all documents obtained as a result of this order (except original documents which belong to the Applicant) as soon as possible and in any event within two working days of their removal.



10

**SCHEDULE E**

<u>UNDERTAKINGS GIVEN BY THE SUPERVISING LEGAL REPRESENTATIVE</u>

1.  The Supervising Legal Representative will use his best endeavours to serve this order upon the First Respondent and at the same time to serve upon the First Respondent the other documents required to be served and referred to in paragraph 1 of Schedule D.

2.  The Supervising Legal Representative will offer to explain to the person served with the order its meaning and effect fairly and in everyday language, and to inform him of his right to take legal advice (including an explanation that the First Respondent may be entitled to avail himself of the privilege against self-incrimination and legal professional privilege) and to apply to vary or discharge this order as mentioned in paragraph 25 above.

3.  The Supervising Legal Representative will retain in the safe keeping of his firm all items retained by him as a result of this order until the Court directs otherwise.

4.  Unless and until the Court otherwise orders, or unless otherwise necessary to comply with any duty to the Court pursuant to this order, the Supervising Legal Representative shall not reveal to any person any information relating to those items, and shall keep the existence of such items confidential.

5.  The Supervising Legal Representative will make and provide to the Applicant's legal representatives, the Respondent or his legal representatives and to the Judge who made this order (for the purposes of the Court file) a written report on the carrying out of the order, within 1 business day after the completion of the search.



11

**SCHEDULE F**

<u>AFFIDAVITS</u>

The Applicant relied on the following affidavits:

| [name] | [number of affidavit] [date sworn] [filed on behalf of]: | | |
|---|---|---|---|
| Mr Jonathan Fortnam | 1 | 25 June 2018 | Claimant |





IN THE DIFC COURT OF FIRST INSTANCE

CLAIM NO: CFI-048-2018

BETWEEN:

SKAT
(The Danish Customs and Tax Administration)

Claimant

- and -

(1) ELYSIUM GLOBAL (DUBAI) LIMITED
(2) ELYSIUM PROPERTIES LIMITED

Defendants

## ANNEX 2

TO THE REPORT OF THE SUPERVISING LEGAL REPRESENTATIVE

SEARCH COMMENCED: THURSDAY, 28 JUNE 2018

**EXECUTION OF THE SEARCH ORDER GRANTED BY JUSTICE SIR JEREMY COOKE DATED 27
JUNE 2018 (THE "ORDER") WHICH WAS SERVED ON MR SANJAY SHAH AS AN AUTHORISED
REPRESENTATIVE OF ELYSIUM GLOBAL (DUBAI) LIMITED ON 28 JUNE 2018 – PROCEDURE
FOR DEALING WITH POTENTIALLY PRIVILEGED DOCUMENTS AND EXPEDITING THE
SEARCH**

Having taken legal advice from his lawyers, Mishcon de Reya, Mr Shah has informed Mr Philip
Punwar, in his capacity as the Supervising Legal Representative, that there may be emails, between
him and various law firms, which he believes to be privileged. Appropriate arrangements are
therefore to be put in place as set out below with regard to these documents for the purposes of the
search pursuant to paragraph 11 of the Order (the "**Potentially Privileged Documents**"). Mr Shah
has provided a list of those law firms who may be the subject of such communications which are listed
below.

| Location | Law Firm |
|---|---|
| Dubai | Allen & Overy |
| | Addleshaw Goddard |
| | Yousuf Bin Hammad Advocates |
| | Al Safar Partners |
| | |
| London | Allen & Overy |
| | Mishcon de Reya |
| | Reed Smith |
| | CGS |
| | |
| Luxembourg | SPS |
| | SKM |
| | |
| Frankfurt | Allen & Overy |

In addition to the arrangements in respect of the Potentially Privileged Documents, the parties have
also agreed that in order to expedite the Search process, and to minimise the disruption to Elysium,
the size of the search team can be increased to include 3 additional Pinsent Masons people and up to
3 additional Deloitte personnel and that Deloitte will be allowed to run certain IT processes on and
using the office IT systems over the course of 29 June to 1 July 2018 as set out in more detail below.

**In order to proceed with the search, the parties have agreed that:**

Deloitte will take a forensic image of Mr Shah's mobile phones, laptop, desktop, and a download of his
Office 365 mailbox (which we understand is in a cloud, and which may also take place over the
course of 29 June to 1 July 2018) (the "**Forensic Image**").

Deloitte will create two copies of the Forensic Image, both copies of which shall be held by the
Supervising Legal Representative named in the Order.

The Supervising Legal Representative will retain, for safe keeping and until further order of the Court,
both copies of the Forensic Images.

No parties will review the Forensic Images until further instruction by the Supervising Legal
Representative or further direction of the Court in respect of the Potentially Privileged Documents.

Deloitte, in addition, will preserve data from certain office devices and cloud based storage devices
(Office 365 email and network data) over the course of 29 June to 1 July 2018. This is due to the
extensive size of the devices and relative time required to collect the data. This data will be copied to
an external USB device stored at the office.

The Pinsent Masons and Deloitte search team will be increased to 6 and 8 representatives respectively in total.

**Signed on 27 June 2018 by:**

| SUPERVISING LEGAL REPRESENTATIVE | |
| --- | --- |
| | **Philip Punwar** |
| **SANJAY SHAH** (AS AUTHORISED REPRESENTATIVE OF ELYSIUM GLOBAL (DUBAI) LIMITED | |
| | **ELYSIUM GLOBAL (DUBAI) LIMITED** |
| **PINSENT MASONS** AS THE APPLICANT'S LEGAL REPRESENTATIVE | |
| | **Mark Raymont** |